UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION   '05   MAR 31   P 3 :40

WILLIAM SPENCER,

       Plaintiff,

vs.

MICHAEL BOUCHARD, THOMAS
QUISENBERRY, CAPTAIN WALLACE,
and LT. SNAREY,

       Defendants.

Case No. 03-40043

03-40043

HONORABLE PAUL V. GADOLA
HONORABLE STEVEN D. PEPE

_____/

### REPORT AND RECOMMENDATION

Plaintiff William Spencer is a prisoner in the custody of the Michigan Department of

Corrections ("MDOC"). Plaintiff filed a *pro se* civil rights complaint against several

individual Defendants pursuant to 42 U.S.C. § 1983, alleging violations of his First, Fourth,

Eighth, and Fourteenth Amendment rights. On October 28, 2004, Defendants filed a motion

for summary judgment and/or judgment on the pleadings. All pretrial proceedings were

referred to the undersigned pursuant to 28 U.S.C. §§ 636(b)(1)(A),(B).

1.    BACKGROUND

Plaintiff was a pre-trial detainee at the Oakland County Jail from August 15, 2001,

through February 4, 2002. Plaintiff entered a guilty plea on charges of Criminal Sexual

Conduct, 2nd Degree (Person Under 13) and was transferred to the Muskegon Correctional

Facility on February 4, 2002. Plaintiff is currently housed at the Bellamy Creek Correctional

Facility in Ionia, Michigan.  Plaintiff filed his complaint on March 4, 2003.  From May 21, 2003, through November 18, 2003, Plaintiff filed approximately 35 motions, pleadings, and other correspondence.  On February 6, 2004, the Court ordered Plaintiff to submit all other pleadings, motions, discovery requests, and correspondence to the chambers of the undersigned before they were filed.

Plaintiff alleges that, while housed at the Oakland County Jail, he was denied adequate out of cell exercise time due to overcrowded conditions and was denied due process in using the grievance procedure.  He also claims that he was not provided warm and dry housing or adequate reading material, and that his mail was opened.  Specifically, Plaintiff's complaint claims that he received no out of cell exercise and no shower while he was in the intake holding cell on August 15, 2001 (Compl. ¶¶ 8-9). [In a grievance filed November 23, 2002, Plaintiff claims that he was in the holding cell from August 15 - August 25 and received no out of cell exercise].  On August 16, 2001, he was placed in cell I-R2, which was designed to house four inmates but actually had eight inmates due to overcrowding (Compl. ¶¶ 10-11). [In a grievance filed November 23, 2002, Plaintiff claimed that he was placed in I-R2 on August 25, 2001, which was designed to hold six inmates but actually had eight inmates].  On September 1, 2001, he was placed in cell I-R4, which was designed to hold six inmates but actually had ten inmates due to overcrowding (Compl. ¶¶ 13-14) . [In a grievance filed November 23, 2002, he claimed that he was moved to cell I-R4, an eight man cell holding ten men, on approximately September 8, 2001].  The cell was cold and contained black mold (Comp. ¶ ¶ 35, 38).  He slept on the floor and when it would rain or snow, his sleeping area would get wet (Compl. ¶¶ 34- 35) .  When he tried to protect himself from the moisture with

2

plastic and extra blankets, Defendants Wallace and Snarey confiscated the materials (Compl. ¶ 37, 45). From November 2001 through February 2002, Plaintiff was granted sporadic out of cell exercise time, except for a ten day period in December when he participated in out of cell exercise several times (Compl. ¶ ¶ 16-17).

Plaintiff claims that his legal mail was opened and delivered late (Compl. ¶ 47-48). He also claims that he was denied access to the library cart from August to November (Comp. ¶ 49). When Plaintiff sent a grievance about this matter, Defendant Wallace restricted his television privileges for three days (Compl. ¶ 51). He claims there was excessive noise at night and he kited Defendant Snarey about this (Compl. ¶ ¶ 55, 57). The day he kited Defendant Snarey, inmates were subjected to a shakedown which Plaintiff claims was retaliatory (Compl. ¶ 58).

Plaintiff alleges that he kited Defendants Snarey, Wallace, and Bouchard about the overcrowding and lack of exercise time but received no response (Compl. ¶ 20-25,39,43). Plaintiff was transferred to Muskegon Correctional Facility on February 4, 2002 (Compl. ¶ 19). On November 23, 2002, and January 24, 2003, Plaintiff mailed grievances to the Oakland County Jail, to which he received no responses (Compl. ¶ ¶ 29-32).

II.    STANDARD OF REVIEW

    A.    Summary Judgment

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Yet, that is not the Plaintiff's present claim.

B.    12(b)(6)

A court may decide a motion to dismiss only on the basis of the pleadings. *Song v. City of Elyira, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). Dismissal is appropriate if the complaint fails to set forth an allegation of a required element of a claim. In deciding a motion to dismiss under Fed. R. Civ. P. 12(b), a court must accept all well-pled allegations as true and construe them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 117 (1990); see also *Jenkins v. McKeithen*, 395 U.S. 411, 421-422 (1969); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976). A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Pro se complaints are to be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).



III.    ANALYSIS

4

A.      The Rights of Pre-Trial Detainees

Pretrial detainees do not come within the Eighth Amendment, which protects convicted prisoners. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir.2004). That does not mean, however, that jailors can be deliberately indifferent to the needs of detainees. Under the Fourteenth Amendment's substantive due process clause they are entitled to the same minimum standards of care as prison inmates. *Graham*, 358 F.3d at 383 (Fourteenth Amendment "affords pretrial detainees a due process right . . . that is analogous to the Eighth Amendment rights of prisoners."). The same standard -- deliberate indifference – applies to detainees and convicts alike. See *id.*; *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir.2001).

Because pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights enjoyed by convicted prisoners, *id.* at 545, the Sixth Circuit has held pretrial detainees are entitled to protections equivalent to the Eighth Amendment rights of convicted inmates. *Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)); *Heflin v. Stewart County*, 958 F.2d 709, 713-14, *modified on rehearing*, 968 F.2d 1 (6th Cir.), *cert. denied*, 506 U.S. 998 (1992). In this case, therefore, plaintiff's Fourteenth Amendment claims should be analyzed by looking to deliberate indifference under Eighth Amendment standards.

B.      Defendant Quisenberry

Defendant Quisenberry's name does not appear in any of the grievances. The Sixth Circuit has applied the requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) to hold that a prisoner who files a § 1983 claim involving prison conditions

5

must *allege* and *show* that he has exhausted all available state administrative remedies. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). The Court has further stated that when filing a civil complaint regarding prisoner conditions, "a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and outcome." *Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). Failure to demonstrate exhaustion *with the complaint* will result in dismissal for failure to state a claim. *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002). Moreover, grievances filed in an attempt to exhaust administrative remedies must name the individual subjects of the grievances so prison officials can address the claims before a suit is brought in federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). Substantial compliance with § 1997e(a) is only sufficient to satisfy the exhaustion requirement in the "limited category of prisoner cases in which the events giving rise to the claim occurred before the effective date [April 26, 1996] of the statute". *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

Prisoners are not only required to demonstrate exhaustion of any claims with the complaint, *Baxter*, 305 F.3d at 489, they must name any individual defendant in a Step I grievance and then proceed through the remaining grievance appeals in order to completely exhaust their administrative remedies. *Burton v. Jones*, 321 F3d. 569, 575 (2003) ("Thus, for a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct *on the part of the defendant at Step I of the grievance process*.") (emphasis added); *Curry*, 249 F.3d at 505.

6

Plaintiff attached his grievances to his complaint. While the other Defendants are all named in the grievances, Defendant Quisenberry's name is nowhere to be found. In the November 23, 2002, grievance, Plaintiff states he complained to "various shift sergeants" and "Lieutenant Corrective Services". This does not satisfy the requirements of the PRLA for Defendant Quisenberry, and claims against him should be dismissed under Rule 12(b)(6) for failing to state a claim because of non-compliance with 42 USC § 1997e(a).

    C.    <u>Defendants Bouchard, Wallace, and Snarey</u>

        1.    Overcrowding

Conditions in prison may, at some times, exceed population limits. Exceeding those limits is not necessarily overcrowding and, moreover, overcrowding itself is not necessarily unconstitutional. *Johnson v Heffron*, 88 F3d 404, 407 (6th Cir. 1996). In this case Plaintiff's complaint states that he was in cell I-R2, a cell designed to house four inmates, with seven other inmates from August 16 through September 1. He claims that he was in cell I-R4, a cell designed to house six inmates, with nine other inmates from September 1 through February 4. In Plaintiff's grievance dated November 23, 2002, he states that cell I-R2 was designed to house six inmates and that cell I-R4 was designed to house eight inmates. In their motion for summary judgment (exhibit B) Defendants provided an administrative order of the Oakland County Sheriff's Department that cell I-R2 can hold a maximum of 10 inmates and cell I-R4 can hold a maximum of 10 inmates. Plaintiff has provided no evidence countering this submission. Plaintiff has not alleged that he suffered any injury as a result of this alleged "over-crowding". Defendants should be granted summary judgment on this overcrowding

7

issue.

### 2.    Cruel and Unusual Punishment/Confinement

To succeed in Eighth Amendment challenge in context of prison conditions, plaintiff must establish that: (1) an identifiable necessity of civilized human existence is being denied, and (2) defendant prison official(s) acted with sufficiently culpable state of mind.  *Hadix v. Johnson*, 367 F.3d 513 (6th Cir. 2004); U.S.C.A. Const.Amend. 8.  Plaintiff claims not that Defendants actively did anything to him, but failed to prevent harm to him.  To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with deliberate indifference to a substantial risk that would cause prisoners serious harm. *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001).

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).  The Eighth Amendment requires that convicted prisoners be provided "the minimal civilized measure of life's necessities." *Id.* at 347.  Yet, the Court has also recognized that "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes cannot be free of discomfort." *Id.* at 349.  Thus, the Court has held that the Eighth Amendment's prohibition of cruel and unusual punishment forbids only egregious conditions: "Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Id.* at 347.

8

a. out of cell exercise

In the context of a claim of cruel and unusual punishment under the Eighth Amendment based on a reduction of prisoner yard time, the Sixth Circuit has described the district court's function as follows:

> [T]he function of a federal court in an action challenging prison conditions under the eighth amendment[] is not 'how best to operate a detention facility,' nor to decide what is most desirable for the inmates. *Rhodes*, 452 U.S. at 351, 352, 101 S. Ct. at 2401, 2402. Rather, a court's function under the eighth amendment standards is to determine the '*minimal* civilized measure of life's necessities.' *Id.* at 347, 101 S. Ct. at 2399 (emphasis added). In respect, then, to the yard time controversy, the trial court must seek the *minimum* amount of yard time necessary for the inmates' well-being under minimal civilized standards. *See, e.g., Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979).

*Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). The right of a prisoner to some exercise has been recognized as fundamental. *O'Bryan v. Saginaw County*, 437 F.Supp. 582, 599 (E.D. Mich. 1977) (Confinement for long periods of time without the opportunity for regular exercise is a deprivation of due process as guaranteed by the Fourteenth Amendment and cruel and unusual punishment as prohibited by the Eighth Amendment).

In his complaint, Plaintiff alleged that he had no opportunity to exercise from August 15, 2001, until October 14, 2001, when he was given 50 minutes of exercise time. He then alleges that he received "sporadic, inconsistent" opportunities to exercise from November 2001, through February 4, 2002, except for 10 days at the end of December when he was given several opportunities to exercise. In his grievance, dated November 23, 2002, Plaintiff alleged that he received no opportunities to exercise from August 15, 2001, through the second week of November. Again he alleges that he received sporadic, inconsistent opportunities to

9

exercise throughout November and December, except for the 10 day period at the end of December. He then alleges that he received no opportunities to exercise from January 2, 2002, until February 4, 2002.

Defendants respond that, according to log book records attached to their motion for summary judgment, Plaintiff was offered out of cell exercise at least 19 times from August 14, 2001, through February 4, 2002. The log books also show that, due to overcrowding and inclement weather, recreation time was cancelled for certain days. Although Plaintiff alleges Eighth Amendment violations for not being allowed out of cell exercise, he has not provided sufficient argument to show that his situation amounted to such a violation. In *Rodgers v. Jabe*, 43 F3d 1082, 1088 (6 th Cir. 1995), the Sixth Circuit noted that exercise restrictions "may violate the Eighth Amendment under some circumstances." Citing *Patterson v. Mintzes*, 717 F2d 284, the *Rodgers* Court noted that a total or near total-deprivation of exercise or recreation opportunity, without penological explanation, violates the Eighth Amendment. Here, Plaintiff's limitations were not a total or near-total deprivation - even by his own account he received some out of cell exercise. Additionally, in light of the problem of overcrowding, the limitations were reasonably taken to protect Plaintiff's safety and security under conditions of overcrowding. "It goes without saying that if one acts reasonably one is not acting with deliberate indifference." *Jackson et. al. v. City of Detroit* , 449 Mich 420, 431 n. 14 (1995). While a county at some point may be found in violation of the constitution due to prolonged overcrowding with no efforts to mitigate its consequences, none of the named defendants had control or responsibility for the overcrowding at the Oakland County jail. They were justified

10

in certain restrictions on out of cell exercise during this period.

        b.       warm and dry housing

Plaintiff's complaint alleges that his cell (I-R4) flooded, soaking his blanket, whenever it would rain or snow (Compl. ¶ 35). He also alleged that during the winter months, the temperature in cell I-R4 was so cold that the deputies wore their coats and ice formed on the walls of the cell (Compl. ¶ 41). A material factual dispute exists as to whether defendants violated Plaintiff's Eighth Amendment rights by failing to provide him with adequate protection from the cold. Defendants have not addressed this issue and have provided no penological justifications for this. Housing that is sufficiently warm and dry is a minimal civilized measure of life's necessities, and denial of such could be seen as cruel and unusual confinement. Viewed in the light most favorable to Plaintiff, there may be a genuine issue of material fact and, therefore, this claim survives summary judgment.

        3.       Due Process Regarding the Grievance Procedure

Plaintiff alleges that the Defendants violated the Due Process Clause of the Fourteenth Amendment by failing to provide due process in addressing his grievances. Specifically, he claims that Defendants did not respond to his kites, and that no one responded to grievances he mailed to Oakland County Jail. Yet, in his exhibits filed October 18, 2004, Plaintiff filed copies of Defendants' responses to his November 23rd grievance, his January 24th grievance, and his February 6th grievance. Even if Plaintiff's allegations were true, there is no constitutional right to an effective grievance procedure, and thus Plaintiff would not have a claim. *O'Bryan v. County of Saginaw*, 437 F.Supp. 582, 601 (E.D. Mich. 1977).

**B.**    First Amendment Claims

Plaintiff asserts that, after he filed a grievance regarding lack of access to adequate reading material, Defendants retaliated against him by restricting his television privileges for three days.

### 1. Legal Standard

To recover on a claim of retaliation, a plaintiff first must show that the conduct that allegedly caused the defendant to retaliate against plaintiff was constitutionally protected. Second, plaintiff must show that the protected conduct was a substantial or motivating factor in the allegedly retaliatory conduct. Once a plaintiff establishes this *prima facie* case of retaliation, the burden shifts to the defendant to show, by a preponderance of the evidence that he would have taken the same action even if plaintiff had not engaged in the constitutionally protected conduct. *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) *(en banc)* clarified that a claim of retaliation entails three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* at 394.

### 2. Exhaustion

12

In a grievance dated January 25, 2003, Plaintiff asserts "When a community grievance was signed by everybody in I-R2, 3 and 4, we all lost our television privileges for making a fuss" and "When the inmates complained to Lt. Snarey of the excess noise an extensive shakedown of the cells took place which seemed to be retallitory."

As noted above, the Sixth Circuit has applied the requirements of the PRLA to hold that a prisoner who files a § 1983 claim involving prison conditions must *allege* and *show* that he has exhausted all available state administrative remedies. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). The Court has further stated that when filing a civil complaint regarding prisoner conditions, "a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and outcome." *Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). Failure to demonstrate exhaustion *with the complaint* will result in dismissal for failure to state a claim. *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002). Moreover, grievances filed in an attempt to exhaust administrative remedies must name the individual subjects of the grievances so prison officials can address the claims before a suit is brought in federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). Substantial compliance with § 1997e(a) is only sufficient to satisfy the exhaustion requirement in the "limited category of prisoner cases in which the events giving rise to the claim occurred before the effective date [April 26, 1996] of the statute". *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

Prisoners are not only required to demonstrate exhaustion of any claims with the

13

complaint, *Baxter*, 305 F.3d at 489, they must name any individual defendant in a Step I grievance and then proceed through the remaining grievance appeals in order to completely exhaust their administrative remedies. *Burton v. Jones*, 321 F3d. 569, 575 (2003) ("Thus, for a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct *on the part of the defendant at Step I of the grievance process.*") (emphasis added); *Curry*, 249 F.3d at 505.

While Defendants did not raise failure to exhaust as a defense, the Court may address this issue *sua sponte.* "A plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed *sua sponte.* . . . If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002) (citations omitted).

In his January 25, 2003, grievance, Plaintiff does not specify who he felt was responsible for the retaliatory loss of television privileges and did not name any of the Defendants in relation to this incident. Plaintiff did state that he complained to Defendant Snarey about the noise, but did not name any persons responsible for the alleged retaliatory shakedown. The non-specific allegations contained in Plaintiff's grievance do not satisfy the requirements of the PRLA for the retaliation claims and these claims should be dismissed under Rule 12(b)(6) for failing to state a claim because of non-compliance with 42 USC §

14

1997e(a).

C.     Fourth Amendment Claims - Legal Mail

In his complaint, Plaintiff very broadly states that "On several occasions, [his] legal mail from his attorney had been opened prior to being delivered to [him]" and "Mail from [his] attorney at times was delivered so late that it was impossible for [him] to address problems with his attorney with ample time before a hearing date." Plaintiff has not cited any specific incidences to support these allegations. Additionally, Plaintiff has not alleged that Defendants are the parties responsible for opening his mail. Plaintiff's conclusory and unsupported allegations fail to establish a constitutional violation.


IV.     RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Defendant Quisenberry be DISMISSED. IT IS FURTHER RECOMMENDED that Defendants' motion to dismiss the retaliation claims BE GRANTED, Defendants' motion for summary judgment on the overcrowding claims and the Fourth Amendment legal mail claims BE GRANTED, and Defendants' motion for summary judgment on the Eighth Amendment warm and dry housing issues BE DENIED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th

15

constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

SO ORDERED.

Dated: March 31, 2005
Ann Arbor, Michigan

STEVEN D. PEPE
UNITED STATES MAGISTRATE JUDGE

16